**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| MARGIE M. BANKS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>　　　　Defendant. | No. ED CV 04-1122-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

　　　Plaintiff filed this action on September 6, 2004, seeking review of the Commissioner's denial of her application for Social Security Disability benefits. The parties filed a Consent to proceed before the undersigned Magistrate Judge on September 29, 2004.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 26, 2005, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on March 9, 1951. [Administrative Record ("AR") at 56.] She has two years of college education and past relevant work experience as a licensed practical nurse. [AR at 97, 102, 573.]

On October 17, 2002, plaintiff filed an application for Disability Insurance benefits. [AR at 56-58.] Plaintiff alleged disability due to chest pain, back and neck pain, status post heart surgery, and hypertension. [AR at 11, 96.] Plaintiff claimed that she has been unable to work since December 8, 1999. [AR at 56, 96.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on January 20, 2004, at which plaintiff appeared with an attorney and testified on her own behalf. Testimony was also presented by a vocational expert, a medical expert, and plaintiff's husband. [AR at 568-612.] On February 26, 2004, the ALJ determined that plaintiff was not disabled and thus not entitled to benefits. [AR at 10-18.]

When the Appeals Council denied review on July 16, 2004, the ALJ's decision became the final decision of the Commissioner. [AR at 3-5.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well

as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-1041 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial work activity since the alleged onset of her disability. [AR at 11.] At step two, the ALJ concluded that plaintiff has the severe impairments of "palpitations of the heart, status post heart surgery, status post repaired retinal detachment OD, bilateral sensori-neural hearing loss which is improved with hearing aids, and degenerative disc disease and degenerative arthritis of the neck, which more than minimally restricts the ability to perform basic work related activity." [Id.] At step three, the ALJ found that plaintiff's impairments do not meet or equal the requirements of any of the impairments in the Listing. [AR at 11-12.] The ALJ further found that plaintiff has the residual functional capacity[1] to perform a "significant range of light work activities."[2] [AR at 12.] At step four, the ALJ concluded that plaintiff is unable to perform her past relevant work. [AR at 16.]

---

[1]    Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2]    Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.967(b). Specifically, the ALJ concluded that plaintiff "is capable of lifting 20 pounds occasionally and 10 pounds frequently, standing and/or walking for two hours out of an eight hour day, and sitting for six hours out of an eight hour day. [Plaintiff] is limited to occasional neck motion with no extreme motion but can keep her head in a downward position for two hours. [Plaintiff] is limited to occasional stooping and bending. [Plaintiff] is able to climb stairs but is precluded from climbing ladders, working at heights, and balancing. [Plaintiff] is precluded from work in an environment that is excessively noisy." [AR at 12.]

At step five, the ALJ concluded that based on plaintiff's residual functional capacity, age, education, and work experience, there is a significant number of jobs she can perform in the regional or national economy. [AR at 17.] Thus, the ALJ found plaintiff not disabled. [AR at 17-18.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ (1) failed to appropriately consider the testimony of plaintiff's husband; and (2) improperly rejected the opinion of plaintiff's treating physician. For the reasons discussed below, the Court respectfully disagrees with plaintiff, and affirms the Commissioner's decision.

### A.    THE EVIDENCE

At the hearing on January 20, 2004, plaintiff testified that she sometimes "get[s] the shakes," which can happen any time but is worse when she gets nervous. [AR at 569-70.] Plaintiff stopped working because of her "physical condition," as a result of which she "could not go any further." [AR at 572.] She has episodes where her heart rate increases, she gets sweaty and "really lethargic," and then she gets "really weak." [AR at 571-72.] As a result of a car accident in September, 2003, plaintiff stopped going to college, as she could not concentrate. [AR at 573.]

Plaintiff testified that she cannot do any cleaning. If she cooks, she then has to sleep. [AR at 584.] If she tries to make the bed, she has to sit down, and gets sweaty, sticky and dizzy. [AR at 586.] She has to rest between any activities. [AR at 586.] Plaintiff gets chest pain on a daily basis, and it occurs mostly at night. [AR at 588.] She also has neck pain, which goes across the shoulder, as well as down the back and arm. It is a rigid pain, and she sometimes gets paralysis of her right arm. Plaintiff was scheduled for neck surgery in late January, 2004. [AR at 593.] Plaintiff testified that she can sit for only 15 to 20 minutes because of pain; she can stand for only less than 15 minutes because she gets dizzy. [AR at 597.] She does not do "a whole lot of walking." She tries to cook and clean a little, but gets out on only the seldom occasion. [AR at 596.] She cannot lift a gallon of milk, but will do so if she does not have a choice. [AR at 598.]

Most of the time when she is awake, plaintiff sits with her feet up on the sofa, sits on her bed, or lies down on her side. [AR at 599.]

On October 22, 2003, Dr. William Jih completed a medical opinion form in which he opined that plaintiff can frequently lift less than 1 pound and occasionally lift less than 5 pounds, can stand and walk for less than one hour during an eight hour day and sit for less than two hours, with an option to alternate between sitting, standing and walking. Plaintiff will need to lie down at unpredictable intervals during her work shift, and may be absent from work about twice a month. Dr. Jih indicated that plaintiff suffers from shortness of breath, palpitations, dyspnea, tremors, and right arm weakness, and that the tremors affect her motor control. [AR at 563-65.]

Plaintiff had been seen by Dr. Jih once or twice, although she has seen doctors in the office where Dr. Jih practices since at least 1999. [AR at 575.] When Dr. Jih filled out the medical opinion form, he checked plaintiff's reflexes "and everything" as they talked, and he had plaintiff's chart in front of him. [AR at 576.]

The medical expert testified at the hearing that plaintiff has palpitations of the heart. She had a radio frequency ablation in December, 1999, but there are no objective signs of arrhythmia. She also had a repaired retinal detachment of the right eye, and has hearing loss that has improved or could be improved with a hearing aid. [AR at 576.] She also has general arthritis of the neck that was surgically treated in November, 2003. [AR at 577.] He testified that none of plaintiff's conditions meet or equal any of the Listings. He also indicated that plaintiff can stand or walk two hours out of an eight hour weekday, and can sit six out of eight hours; can lift twenty pounds occasionally and ten pounds frequently; has full neck motion, but it should be occasional with no extreme motion; can occasionally stoop and bend; cannot climb ladders, work at heights or balance; and should not work in an excessively noisy environment. [AR at 577.] The medical expert reviewed plaintiff's records and opined that Dr. Jih's conclusion as to plaintiff's residual functional capacity -- that plaintiff is disabled because of shortness of breath, palpitations, dyspnea, tremors and right arm weakness -- is not documented by significant objective evidence in the records. [AR at 578-80.]

Plaintiff's husband testified that plaintiff has been taking multiple medications for years. [AR at 604.] He testified that his wife has chest pains in the middle of night. The surgery did not do any good, as plaintiff is still not off the multiple medications. [AR at 604-06.] Plaintiff cannot shop a lot of the time because she gets tired and has severe pains. She cannot even walk without getting tired. [AR at 606.] When plaintiff gets pains in the night, her husband puts a wet towel on her. [AR at 606.] She also has problems with her right arm and with trembling. [AR at 608.]

**B.    FAILURE TO PROPERLY CONSIDER LAY TESTIMONY**

Plaintiff first contends that the ALJ improperly rejected the testimony of plaintiff's husband. See Joint Stipulation at 3-4. Specifically, the ALJ concluded that plaintiff's husband's testimony "adds little to [plaintiff's] own testimony," and his opinions "appear to reflect a filial acceptance of [plaintiff's] complaints and may well be at least partially motivated by the desire to see [plaintiff] obtain financial benefit." The ALJ found his statements "unworthy of significant probative weight." [AR at 15.]

Judges may, "[i]n addition to evidence from the acceptable medical sources . . . also use evidence from other sources to show the severity of [plaintiff's] impairment(s) and how it affects [her] ability to work." 20 C.F.R. § 404.1514(d) (2005). Such other sources include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. § 404.1514(d)(4). Thus, lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider. Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); see Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) ("[a]n eyewitness can often tell whether someone is suffering or merely malingering.... [T]his is particularly true of witnesses who view the claimant on a daily basis..."). An ALJ's consideration of lay testimony becomes especially important when a plaintiff alleges "that pain is a significant factor of his alleged inability to work and the allegation is not

supported by objective medical evidence in the file." SSR[3] 88-13; see Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). To reject lay testimony, an ALJ must give reasons "germane to each witness" for doing so. Dodrill, 12 F.3d at 919.

The Court agrees with plaintiff that one of the rationales provided by the ALJ to reject plaintiff's husband's testimony -- a "filial acceptance" of his wife's complaints and the desire to see her obtain financial benefits -- is precisely the type of reasoning rejected by the Ninth Circuit in Smolen, 80 F.3d at 1288-89. There, the court concluded that the ALJ erred in rejecting the testimony of the plaintiff's family members for the reason, in part, that as family they were advocates and biased. The court concluded that "the same could be said of any family member who testified in any case. The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony." Id. at 1289.

But this was not the only reason provided by the ALJ to reject the testimony of plaintiff's husband in this case. The ALJ also concluded that this testimony added little to plaintiff's own testimony. Plaintiff does not contest this assertion in the Joint Stipulation. Indeed, the ALJ's conclusion in this regard is supported by the evidence in the record. Plaintiff's husband testified that plaintiff still has to take several medications, and her symptoms of chest pain have continued. He indicated that he does the bulk of the chores and sometimes plaintiff is unable to shop with him because of chest pain; plaintiff takes nitroglycerine for her pains; she is unable to sleep at night due to the pain. [AR at 603-08.] Plaintiff testified to the same problems. Nothing in plaintiff's husband's testimony indicates that plaintiff is not capable of limited light work. This testimony was properly considered and rejected.

Even an ALJ's complete failure to explain his rejection of lay testimony constitutes only harmless error when that testimony does little more than corroborate a plaintiff's testimony and adds nothing of substance to the record. See 20 C.F.R. § 404.1514(d); SSR 88-13; Books v.

---

[3] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

Chater, 91 F.3d 972, 980 (7th Cir. 1996); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984). Here, where the ALJ actually considered the lay witness testimony and provided a valid reason to reject it, the fact that it was only corroborating of plaintiff's testimony renders any possible error in the level of consideration it was afforded harmless. Remand is not warranted on this issue.

**C.    REJECTION OF TREATING PHYSICIAN'S OPINION**

Plaintiff next contends that the ALJ improperly rejected the opinion of Dr. Jih dated October 22, 2003. In particular, the ALJ concluded that he would give "[n]o significant probative weight" to Dr. Jih's assessment, as it is "not accompanied by any objective evidence in support of the conclusions and is inconsistent with the evidence of record." [AR at 14-15.] Plaintiff argues that Dr. Jih's conclusions are supported by objective evidence from the record, including the existence of tremors [AR at 555] and palpitations. [AR at 369.] Plaintiff further argues that plaintiff has occasional numbness due to medication, as well as shortness of breath, and that the ALJ did not address these side effects. Joint Stipulation at 5-8.

In his opinion, the ALJ went through the medical evidence in the record, discussed the medical expert's opinion, and concluded that plaintiff does not have a significant underlying cardiac impairment, any disabling side effects, or other limitations. [AR at 12-15.] The evidence supports this conclusion.

A stress and rest myocardial perfusion study performed in January, 1999, was abnormal, and showed mild ischemia, partially reversible. [AR at 313.] A study in April, 1999, revealed that both plaintiff's left and right coronary artery systems were normal. [AR at 283.] Chest x-rays revealed a "normal chest with no acute cardiopulmonary disease." [AR at 306.] In November, 1999, Dr. Marc Platt of the Loma Linda International Heart Institute noted that he had been following plaintiff for some time and although there is "a great deal of psychological component to her arrhythmia," he still believed that she has a "very malignant and very rapid recurrent focal atrial fibrillation." He believed that ablation would be the treatment of choice for plaintiff. [AR at 271.] In December, 1999, plaintiff was admitted to the hospital, based on her atrial fibrillation, for a study with ablation. [AR at 143.] The procedure was successful. [AR at 149, 157, 159.] In

January, 2000, Dr. Platt indicated that plaintiff was again in atrial fibrillation, and concluded that "curative radio frequency ablation at this time" is "an impossibility." [AR at 406.] In February, 2000, Dr. Platt opined that plaintiff's anxiety level was "tremendously high" and there is "an emotional component to much of her symptomatology." [AR at 405.] In June, 2000, she was diagnosed with irritable bowel syndrome aggravated by stress. [AR at 391.] In September, 2000, plaintiff reported that she has tremors that get worse at times when she is nervous, which sometimes prevent her from doing tasks such as writing or even holding her grandchildren. [AR at 384.]  As a result of chest pains experienced by plaintiff in October, 2001, chest x-rays were taken.  They were negative, "with no interval defect by comparison with prior reports." There was no active disease discovered on those x-rays. [AR at 495.] Dr. Platt concluded on October 4, 2001, that "[t]here is absolutely no evidence for underlying coronary artery disease.  It would not be inappropriate to simply order a Cardiolite treadmill, although I can assure you it will be normal."  He further noted that plaintiff did have a "sign arrhythmia, which now has been controlled extremely well" on medication. [AR at 116.]

A state agency physician concluded in February, 2002, that plaintiff's physical impairments are non-severe. [AR at 360.] In September, 2002, Dr. Platt reported that plaintiff noted that her sustained episodes of tachycardia have "completely resolved" since the ablation. [AR at 363.] Her physical examination was entirely within normal limits. Dr. Platt could attribute no objective cardiovascular findings to her fatigue and shortness of breath.  He diagnosed her with anxiety neurosis, and self-limited tachycardia, and opined that "there is a component of support that her husband gives to her complaints which makes them more pronounced." [AR 364.]

Dr. Platt reported in October, 2002, that he had taken care of plaintiff for the last 4 to 5 years. He had recently seen her because of palpitations, chest pains, anxiety, "and overall difficulty dealing with many life situations."  She demonstrated good exercise capacity with no significant arrhythmias.  He could ascertain no physical impairment in terms of sitting, standing, walking, lifting, carrying, or handling objects.  He did believe that her ability to concentrate and persist in social interaction is limited. [AR at 501-02.]

At the psychiatric examination performed on plaintiff in January, 2003, plaintiff reported that she was able to do household chores, cook, dress and bathe herself, go to the store and run errands. She occasionally drives. She also goes to school and occasionally goes to the movies. She was diagnosed with anxiety disorder, not otherwise specified, and was found to not have any impairments that would limit her functional ability. [AR at 504-09.] The state agency physician concluded that her psychiatric impairment is not severe. [AR at 511.]

Mild hypertrophic spurs were revealed at the C5 level of plaintiff's spine in April, 2000. [AR at 454.] Studies of plaintiff's cervical spine in August, 2000, were negative, with no limitation of flexion and extension motion range. [AR at 448.] Although there was minimal degeneration of the lower cervical spine, it was an otherwise negative study. [AR at 449.] In September, 2000, plaintiff was experiencing persistent neck pain following a motor vehicle accident which had improved somewhat, but was not fully resolved. The examination of her neck revealed tight, spastic neck muscles. [AR at 384.] No neurologic deficits were noted. [AR at 385.]

In December, 2003, a review of an MRI showed degenerative cervical disc changes at C4-5 and C5-6 with a small bulge, but there was no severe canal or foraminal compromise. Plaintiff at that time elected to deal with her back and neck pain through a neck brace, rather than surgery. [AR at 549.] However, surgery was subsequently scheduled for January, 2004. [AR at 14, 558.]

The evidence shows that Dr. Platt, who treated plaintiff for a number of years, concluded on multiple occasions that plaintiff has no physical impairment that would limit her ability to perform work activities. He did not believe there was any cardiac disability. Dr. Jih's opinion is inconsistent with this evidence as well as the medical expert's testimony. Although plaintiff notes that Dr. Jih's conclusion that plaintiff has tremors were in fact noted on physical examination (Joint Stipulation at 6), the ALJ properly evaluated the remainder of the evidence and provided specific and legitimate reasons to reject the findings of Dr. Jih. Indeed, plaintiff's reference to palpitations, even if noted in medical records, are certainly outweighed by the ultimate conclusions of Dr. Platt, who examined plaintiff over a many year period, and found no disabling condition.

Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

(examining or consultative physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). Lester, 81 F.3d at 830. The opinion of a treating physician is given deference because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Sprague, 812 F.2d at 1230 (citations omitted). "The opinion of the treating physician, however, is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989).

"'The administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so.'" Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (quoting Matthews v. Shalala, 10 F.3d at 678, 680 (9th Cir. 1993) (quoting Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984)); see also Lester, 81 F.3d at 830. Even if a treating physician's opinion on disability is controverted, it can be rejected only with specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830.

The ALJ is not required to accept a medical opinion that is conclusory and inadequately supported by medical findings, especially when the opinion is in the form of a check-off report. Magallanes, 881 F.2d at 751; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (the ALJ need not accept a treating physician's opinion which is "conclusory and unsubstantiated by relevant medical documentation"); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (ALJ may reject the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings). See also Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctor's opinion because they were check-off reports that did not contain any explanation of the bases of their conclusions); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports). The cursory nature of Dr. Jih's report, with no basis for the conclusions therein, thus also makes the ALJ's reasons for rejecting Dr. Jih's conclusions proper. Those conclusions, largely unsupported by the evidence, and based on just one or two visits with plaintiff, need not be accepted, especially

1  as they are contradicted by other medical evidence, including evidence from a treating physician.
2  As a specific and legitimate reason -- supported by substantial evidence in the record -- was
3  provided to reject Dr. Jih's opinion, the ALJ's decision must stand.

4      Plaintiff lastly contends that the ALJ did not assess testimony concerning the side effects
5  of her medications, which create numbness in her limbs.  Joint Stipulation at 6.  Plaintiff cites to
6  Dr. Jih's form report and plaintiff's statement in her Disability Report for support. [AR at 101, 565.]
7  The ALJ concluded, based on the evidence, that plaintiff showed "no weakness and no sensory
8  deficit" in November, 2003, and had "normal reflexia." [AR at 14, see AR at 552.] This was just one
9  month after Dr. Jih completed his evaluation.  Nothing about plaintiff's tremors would limit her
10 ability to sit or stand, would require her to lie down every 30 to 60 minutes, or require her to miss
11 work twice a month.  Plaintiff has presented no clinical evidence that her side effects were severe
12 enough to interfere with her ability to work.  See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir.
13 1985) (claimant failed to meet burden of proving that an impairment is disabling where he
14 produced no clinical evidence showing that his prescription narcotic use impaired his ability to
15 work).  Remand is not warranted.

## VI.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that: 1. plaintiff's request for remand is **denied**; and 2. the decision of the Commissioner is **affirmed**.

    **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED:  August 18, 2005

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE